IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Fabiola Cruz,
      Plaintiff,

      vs.                                  Case No. 13-2268-JTM

City of Merriam, Kansas, *et al.*,
      Defendants.

MEMORANDUM AND ORDER

Fabiola Cruz worked as the Lead Clerk for the City of Merriam, Kansas Municipal Court until her termination. After her departure, the City began to investigate reports of funds missing from the court. City officials later referred the matter to the Merriam Police Department for additional investigation. Cruz was eventually charged with embezzlement, but the case was dismissed prior to trial. She then instituted the present action under 42 U.S.C. § 1983 against the City of Merriam, as well as various individual City officers. Cruz has advanced claims under 42 U.S.C. § 1983 for (1) unlawful arrest and detention, (2) denial of due process and malicious prosecution, (3) conspiracy, (4) violation of equal protection, and (5) unconstitutional policies and procedures. The defendants have moved to dismiss the claims advanced in Cruz's First Amended Complaint as conclusory and insufficient

under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as well as for additional specific rationales. For the reasons provided herein, the court grants in part and denies in part the defendants' motion.

*The Plaintiff's Allegations*

Cruz alleges in the First Amended Complaint that she began working for the City as a municipal court clerk in 2002. She became Lead Clerk of the Municipal Court in 2004. In this position, Cruz processed all incoming court payments, cash bonds and bond forfeitures. She also balanced and prepared deposits from court transactions. However, Cruz was not the only one in the office who handled such incoming funds. Before her termination on September 1, 2010, she received no negative employment evaluations.

Cruz alleges that she from time-to-time received "various negatively-tinged comments and statements" from unidentified "employees of The City of Merriam Municipal Court." These comments and statements related to "the way in which she spoke and her international accent," as well as "the manner in which she dressed and her ability to afford so-called 'fashionable' or so-called 'high-end' clothing and other retail items." (¶¶ 25, 26).

On September 1, 2010, Cruz was informed of allegations that she had not been actually performing work for an entire day. According to Cruz, she was told that she had until September 3, 2010, to provide proof she had been working full days. Cruz indicated

2

that such proof would be hard to obtain, and was told she needed to supply such proof, or resign. Cruz resigned.

The Complaint alleges that no one else received such a notice, but it does not directly allege that any other specific individuals were similarly situated in their failure to work full days. Cruz generally claims that she was singled out by City Administrator Phil Lammers and Karen Kline, the City Human Resources Director, for allegedly keeping false time records. The City hired defendant Sheila Sheridan as Cruz's replacement.

After her resignation, the defendants began to investigate money missing from the municipal court. The defendants reported Cruz had stolen money from the court, including court fees and bond payments. Cruz alleges that others had access to the computer system, and that she was not the only one who handled payments to the court. Nevertheless, Sheridan, Kline, and Lammers "purposely concealed" this information from the prosecutor. She also alleges that Lammers, Sheridan, and Kline "manufactured" evidence against her, including "calendars and spreadsheets." Sheridan met with Lt. Mike Daniels of the Merriam Police Department about the missing funds in April, 2011. Daniels and Captain Tim Burnett spoke with Cruz at her home on June 16, 2011, and reported that she refused to speak with them about the missing cash. Daniels and Burnett obtained Cruz's bank records by subpoena, and found a pattern of transactions which corroborated the alleged theft.

Daniels and Cruz found that the city court computer system was designed with a journal system, under which every transaction creates a receipt for the customer and also

prints the information onto a journal register. They further found that certain cash-only transactions had been recorded but subsequently deleted, and the cash was not deposited in the City's bank account.

The investigation further reflected that Cruz was the only one to handle the end-of-business process and prepare nightly deposits prior to April 2009, after which she handled the end-of-business process and nightly deposits on Tuesday and Thursday, municipal court days. The investigation also found that there was a pattern of deposits into Cruz's bank account that was indicative of theft and that following her departure from the Clerk's office there were no reported funds missing.

An affidavit containing the results of the investigation, and with information supplied by Daniels, Burnett, Lammers, Kline, and Sheridan, was submitted to the prosecutor.

Cruz alleges that the affidavit "purposefully omitted" exonerating information, such as the fact that as Lead Clerk she rarely handled individual transactions. She alleges that Daniels and Burnett failed to investigate to determine if any money actually was missing. She alleges that "a reasonable police officer" would have known that "no such pattern existed" in her bank records. She states that she was the only one investigated, even though it was possible for another employee to have taken the funds. She alleges that Daniels and Burnett falsely stated in their report that she refused to speak with them about the missing cash.

Cruz alleges that the defendants undertook their investigation without any proof that funds were actually missing, and that audits conducted for the years 2007-2010 detected no cash shortages. Cruz also faults the affidavit for failing to state that there were no witnesses to her taking any money.

According to Cruz, the only evidence produced to support the criminal charges "was the homemade calendar/journal entries which purportedly supported the contention that the sums were allegedly missing and statements from employees of The City of Merriam who described Ms. Cruz as living above her means." Otherwise, there was no evidence of missing funds or that Cruz was responsible for any theft.

Cruz was charged with one count of felony theft on June 27, 2011. The complaint alleged that Cruz had stolen approximately $100,000 from the City of Merriam. Cruz was held in court custody for two days, and subsequently placed on house arrest. Contemporary news reports quoted Lammers as stating that Cruz "diverted" money from "city coffers."

However, the charges against Cruz were dismissed on June 4, 2012, prior to any preliminary hearing.

The Complaint asserts that there was "no evidence that a crime had actually been committed; much less that Ms. Cruz was the criminal who did it."

The First Amended Complaint includes claims against the City generally and against Bill Lietzke, as the Chief of the Merriam Police Department, for the failure to develop adequate polices relating to employee hiring, training, supervision, and retention.

*Conclusions of Law*

A complaint must present factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1949. Here, the defendants have moved to dismiss Cruz's claims of unlawful arrest and illegal detention on the grounds that her Amended Complaint reveals at most an inadequate investigation, and not any constitutional deprivation. According to the defendants, the police investigated, spoke to witnesses, and reviewed records. At most, they argue, the individual defendants may have erred, but that error does not rise to the level of a violation of Cruz's constitutional rights.

The parties agree that, presented with claims of false evidence presented in support of a criminal charging document, the court's task is to determine whether the document, shorn of the false information, would still demonstrate probable cause to believe that the plaintiff committed the crime in question.

> If an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

*Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).

Here, Cruz faults the investigation by Burnett for incorrectly stating that she refused to speak to the police, and that the affidavit filed by Daniels failed to note the lack of witnesses who saw her taking any money. She also asserts that Burnett and Daniels falsely identified a pattern between the theft of cash from the City and deposits in her bank account.

These facts do not detract from the general probable cause supplied by the affidavit, as the corrected information does not affect the general import of that document. Embezzlement is a secretive act by nature, and not ordinarily accomplished in front of eyewitnesses. Further, the absence of eyewitnesses would in any event have been a fact which was immediately obvious to any person reading the affidavit. Similarly, while the affidavit states that Cruz had refused to speak with Burnett and Daniels, this fact was not an essential or even relevant basis for the determination of probable cause. Further, the court notes that while Cruz now contends that she did not refuse to speak to Burnett and Daniels, she does not demonstrate what she would have said at the time that would have effectively negated probable cause.

Cruz's argument that "no reasonable officer" would have reported a pattern in the reported thefts and deposits in her bank accounts is also insufficient to negate probable cause. Cruz contends that such a pattern does not exist because "the funds deposited were not equal to the substantial sums that were alleged to have been stolen." (Dkt. 13, ¶ 53). But absolute equivalence is not needed for the establishment of a general pattern. A rough equivalence, based on timing and rough amounts taken, could support probable cause.

Similarly, plaintiff's argument that the affidavit and investigation wrongfully focused on her, when she was not the only party with access to the computer system, also does not negate probable cause. The court notes that the Amended Complaint is carefully circumscribed, and does not allege that other clerks conducted a majority the cash transactions. Rather, Cruz alleges that she was "not the only individual who handled *all* incoming court payments." (Dkt. 13, ¶ 51) (emphasis added).

Thus, even if the affidavit were corrected to reflect the foregoing allegations, probable cause would still exist. Cruz was the Lead Clerk, and apparently handled many if not most of the cash transactions herself. Spreadsheets supplied by the City indicated a rough parallel between cash payments to the City (which were deleted from the City computer system), and deposits to Cruz's bank account. Additionally, eyewitnesses reported that Cruz appeared to live far beyond her means. Collectively, these would set forth probable cause to believe that Cruz was the culprit in the theft of sums from the City.

A different matter, however, is presented by the audits cited by Cruz, which raises the question of whether any money was even missing. According to the Amended Complaint, independent audits in 2007 through 2010 had "revealed no irregularities and no funds missing."

In their motion to dismiss, the defendants acknowledge Cruz's argument with respect to these audits only briefly, and only in their recitation of the factual background of the case (Dkt. 20, at 4, 6), not in their argument in support of their motion. Their Reply in support of the motion similarly ignores these audits, except for a single glancing

reference. In a footnote, defendants ask "how Sheridan would know the content of any audit conducted prior to Cruz's resignation when Sheridan was not even employed by the City during this period." (Dkt. 25, at 5 n. 2).

The answer to this precise question, of course, would be that she learned of the audits through one of the other defendants. The Amended Complaint specifically alleges "Daniels, Burnett, Sheridan, Kline, [and] Lammers" knew of these audits, but withheld their existence from the prosecutor. (Dkt. 13, ¶ 74). Notably, defendants only single Sheridan out as being unaware of the prior audits.

More importantly, this argument ignores that larger question of the effect of the audits for the other defendants. The defendants simply do not consider the effect of these audits in their probable cause analysis. The court finds that no probable cause would exist if the affidavit had also mentioned that these audits demonstrated no funds were missing from the city. At this stage in the litigation, the court takes as true all of Cruz's allegations, including her contentions that the audits actually confirmed no money was missing (as opposed to simply failing to detect the alleged thefts), and that each of the named defendants were aware of the prior audits.

Accordingly, the court denies the defendants' motion as it relates to the claims under Count 1 for unlawful arrest and under Count 2 for denial of due process or malicious prosecution. In each instance, the defendants rely on the alleged absence of probable cause for the dismissal of the motion. The defendants further argue with respect to Count 2 that the claim is flawed because the Amended Complaint does not demonstrate the additional

element of malice. (Dkt. 20 at 15). *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1257-58 (10th Cir. 2007) (noting "elements of the common law tort ... applicable in a Section 1983 claim").

But under the common law tort, a fact-finder may infer malice from the absence of probable cause. *See Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438, 445 (1980) ("existence of malice or wrongful purpose is ordinarily a question of fact for the jury [which] may infer malice (wrongful purpose) from the absence of probable cause but they are not bound to so infer it"). This inference also exists in actions under § 1983 which are grounded on malicious prosecution. *See, e.g., Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, *4 (D.N.J. March 31, 2014). Because the affidavit would otherwise lack probable cause, and the plaintiff alleges the named defendants knowingly and purposefully omitted the information about the prior audits, an inference of malice arises, and the Amended Complaint states a claim for deprivation of due process by malicious prosecution.

The defendants also move to dismiss the conspiracy claim in the Amended Complaint on the grounds that it offers purely conclusory allegations as to the putative illegal agreement. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim"). Similarly, they argue the court should dismiss the plaintiff's equal protection claim on the grounds that the Amended Complaint fails to explain how Cruz was supposedly subjected to illegal discrimination, or present any plausible claim that she was subjected to selective prosecution. The court finds that the motion to dismiss should be sustained as to these two claims.

In her Response to the motion, Cruz discusses the general standards relating to pleading conspiracy, rather than demonstrating how her actual allegations are anything other than purely conclusory in nature. Cruz's original Complaint merely alleged that the "the Defendants" committed various actions, without any specificity as to which defendant committed any specific action. Her Amended Complaint does nothing to resolve this deficiency, replacing the generic term "the Defendants" with the rote listing of the individual names of all the defendants. This practice is insufficient to demonstrate the alleged conspiracy, because it prevents the individual defendants from determining the nature of the allegations against them. *See Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).

The court will grant the motion to dismiss. The allegations of conspiracy in the Amended Complaint are purely conclusory, and provide no explanation of how this alleged conspiracy — which supposedly existed between officers and employees of different branches of the City government — operated, or even a plausible purpose for the conspiracy. Notably, the plaintiff gives little further clarity to the conspiracy claim in her response to the motion to dismiss. Rather, she again merely lists the individual defendants, together with the additional twenty John Doe defendants sued in the action, and an unexplained, collective reference to *64 paragraphs* of the Amended Complaint. (Dkt. 22, at 17 (citing "FAC ¶¶ 37-101" as giving "more than fair notice" to the defendants)).

This purely generic allegation is insufficient. The cited passage of the Amended Complaint simply recites Cruz's disagreement with the details of the investigation, but

11

completely fails to address how the supposed conspiracy acted or provide any plausible motive for its actions. Accordingly, the court will dismiss the claim for illegal conspiracy.

Cruz's equal protection claims are equally deficient. While she argues that she was subjected to national origin discrimination, this is grounded solely on her allegation that she occasionally heard "negatively tinged" comments by other employees while she worked at the City. But Cruz's § 1983 claims address the investigation and arrest which arose *after* she left the City's employment. More importantly, Cruz has never identified the source of these comments, other than to refer to them generically as City of Merriam employees. That is, despite the filing of the original Motion to Dismiss and the opportunity to file an Amended Petition, Cruz has refused to provide any identification as to (1) who made the comments, (2) what the comments actually were, or (3) when the comments were made. Cruz never asserts that any of the defendants made such comments. The court finds that the Amended Complaint fails to articulate a plausible basis for inferring that the defendants, who occupy different positions at different agencies of the City, deliberately sought to deprive her of the equal protection of the law.

Cruz does argue in her Response that she was subjected to disparate treatment in that she alone was investigated for the alleged embezzlement. (Dkt. 22, at 25). But the Amended Complaint fails to identify or allege the existence of any similarly-situated, non-Hispanic employee who escaped investigation following the reported embezzlement. First, as the Lead Clerk at the municipal court, she had primary access to the payment system and the opportunity to carry out the scheme. Second, the Amended Complaint

acknowledges that witnesses had reported that Cruz appeared to be living beyond her means. Both factors rendered Cruz the primary subject of any investigation, and Cruz has failed to allege the existence of any other municipal court worker who shared similar characteristics.

The defendants next allege that the claim for unconstitutional policies and procedures should also be dismissed, as the plaintiff has presented only conclusory allegations as to the supposedly deficient policies and procedures, presenting only generic failure-to-train allegations. (Dkt. 20 at 21). The defendants contend that Cruz's factual allegations are simply too generic to present a plausible claim for relief under *Twombly* and *Iqbal*.

Cruz responds to the defendants' arguments by citing three cases, *Herrera v. County of Santa Fe*, 213 F.Supp.2d 1288 (D.N.M. 2002); *Bridges v. Allen County*, 2010 WL 2106675 (W.D. Ky. 2010); *Lowry v. Metropolitan Transity System*, 2010 WL 2382326 (S.D. Cal. 2010). (Dkt. 22, at 27). *Herrera* was decided prior to *Iqbal* and *Twombly* and provides little guidance here.

Cruz's reliance on *Bridges* is misplaced. In that case, the court did not address the sufficiency of the complaint's allegations of improper policies and procedures. Rather, the court simply addressed the defendant County's argument that it was not a proper party to the action, since it was not separately named as a defendant. The court referenced the policies and procedures allegations, including the explicit denomination of the county sheriff as the defendant, as sufficient to defeat the county's argument that it was "not a

properly named party." The court did not separately set forth the actual allegations relating to the policies and procedures, or determine that they were sufficient to state a plausible claim for relief under *Twombly* and *Iqbal*.

*Lowry* involved a *pro* se action which was liberally construed in favor of the plaintiff. The case is also distinguishable as the complaint alleged a specific deficiency in failing to train officers to deal with disabled persons. 2010 WL 2382326 at *1. In the present case, in contrast, Cruz's complaint does not deal with a specific failure to prepare for a particular class of plaintiff.

Nevertheless, the court finds that dismissal of Cruz's policies and procedures claim is not warranted. While some of these allegations are indeed generic (e.g., "I. being deliberately indifferent to the violation of the rights of the accused"), the Complaint includes such particular faults as the failure to train officers or employees in the handling of audits (¶ 162h).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, ___ U.S. ___, ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to *deliberate indifference* to the rights of persons with whom the untrained employees come into contact."

14

*Id.* (citing *Canton v. Ohio*, 480 U.S. 378, 388 (1989) (emphasis added)). Deliberate indifference may be demonstrated by a "pattern of similar constitutional violations by untrained employees." *Id.* (citing *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

Here, the Amended Complaint focuses largely on the effect of the inadequate policies on the plaintiff herself. Thus, the Complaint alleges that the policies "operated to deprive Plaintiff of her constitutional rights," and "directly and proximately caused Plaintiff grievous and permanent injury." (¶¶ 160, 165). By themselves, these allegations would not implicate municipal liability. However, the Amended Complaint further alleges that the inadequate training served to violate "the constitutional rights of Plaintiff *and other similarly situated persons*." (*Id.* ¶ 161) (emphasis added). The Complaint asserts a "pattern of conduct" which operated to her injury. (*Id.* at ¶ 164). This is sufficient at this stage of the action. *See Garcia v. Montgomery County*, 2013 WL 453394 *5 (D. Md. 2013) (a *Monell* plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation" (citing *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339–40 (4th Cir.1994))).

The defendants also move to dismiss the Amended Complaint on the grounds that it fails to directly identify their actions as individuals, citing *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008). Further, as to such individual claims, the defendants contend that they are protected by qualified immunity. Finally, the defendants argue that any claims against them in their official capacities should be dismissed, as these claims are redundant, given the separate claim against the City. The court finds that the defendants's arguments

15

do not warrant dismissal.

Although the plaintiff's Amended Complaint is not a model of specificity, it is far from the completely generic complaint in *Robbins*. The Amended Complaint specifically alleges that each of the defendants was aware of the prior audits indicating the absence of any missing funds, and improperly withheld such information from the prosecutor who charged Cruz with theft. As noted earlier, the inclusion of such information would likely have negated the existence of any probable cause to believe that Cruz was involved in the alleged embezzlement scheme. Because the Amended Complaint thus gives fair notice of Cruz's allegations and sufficient specificity as to her claims of unlawful arrest and denial of due process, the Amended Complaint is not subject to dismissal under *Robbins*.

The court also finds that, given the allegations in the Amended Complaint, qualified immunity does not preclude the present action from proceeding against the defendants. Qualified immunity provides protection to a public official in the absence of showings both that the official violated a constitutional right and that the right was clearly established at the time of the official's action. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In their present motion, the defendants present the general standards relating to qualified immunity, but then repeat their arguments relating to the failure of the Amended Complaint to set forth in detail specific actions by specific defendants, concluding that "[t]he qualified immunity analysis is unnecessary ... once the court determines that Plaintiff has failed to state a claim for a violation of her constitutional rights." (Dkt. 12, at 17). The

defendants' argument in support of qualified immunity – if the court were to reject their argument under *Robbins* (as it does) – is contained in a single sentence, asserting that they would "still [be] entitled to qualified immunity because the law at the time of the conduct was not sufficiently clear that *every* reasonable official would have understood that what he or she was doing violated the right." (*Id*. at 18 (emphasis in original)).

The defendants provide no argument or authority to support this assertion, and the court finds that the plaintiff's claims should not be dismissed under the doctrine of qualified immunity at the present time. The plaintiff's Amended Complaint asserts that each of the defendants was aware of exonerating information but withheld it.

The Amended Complaint directly states that each of the individual defendants was aware of the allegedly exonerating audits, but concealed that information from the prosecutors. The exclusion of such information could rationally be viewed as negating probable cause, yielding a violation of plaintiff's constitutional rights. *See Taylor v. Meecham*, 82 F.3d 1556, 1561 (10th Cir. 1996). For purposes of the present motion, the court assumes as true the plaintiff's allegations that the individual defendants each knowingly presented such false information, leading to the plaintiff's criminal prosecution. The Tenth Circuit has recognized the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity." *Pierce v. Gilchrist*, 359 F.3d 1279, 1284 (10th Cir. 2004).

Accordingly, the court finds that, at the present time, the defendants are not entitled

to dismissal of the action under the doctrine of qualified immunity. Further, even if the official capacity claims against the named defendants is redundant, the court finds that these claims need not be dismissed at the present time. *See Capresecco v. Jenkintown Borough*, 261 F.Supp. 2d 319 (D.C. Pa. 2003).

Finally, the defendants argue that plaintiff's equal protection and conspiracy claims are time-barred, to the extent that these rest on actions or events occurring before September 1, 2012. For section 1983 actions, the court looks to state statutes of limitations governing analogous actions. *See Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). under the K.S.A. 60-514(b). In the present case, the most relevant statute would be K.S.A. 60-513(a), which provides a two-year limitations period. The court need not resolve the issue, having determined that the plaintiff's First Amended Complaint otherwise fails to present definite or plausible claims of equal protection or conspiracy.

In sum, the court grants the defendants' Motion to Dismiss as to Counts 3 and 4 of the First Amended Complaint, alleging conspiracy and violation of equal protection. The defendants' motion is in all other respects denied.

IT IS ACCORDINGLY ORDERED this 14th day of May, 2014, that the court grants in part and denies in part defendants' Motion to Dismiss (Dkt. 19), as provided herein.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE